■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID REYNOLDS, Appellant.—Mahoney, P. J. Appeal from a judgment of the County Court of Ulster County (Vogt, J.), rendered April 3, 1986, upon a verdict convicting defendant of the crimes of vehicular assault, assault in the second degree and operating a motor vehicle while under the influence of alcohol.

On March 14, 1985, at about 11:45 P.M., Frank Burk, a United States Army recruiter, was driving to his home in the Town of Saugerties, Ulster County. As he was driving along Old King's Highway, he observed defendant's car, which was directly in front of him, cross over the double center lines and head south in the northbound lane. Just before encountering oncoming traffic, Burk observed defendant's car turn and swerve back into the southbound lane. After the northbound traffic had passed, Burk observed defendant's car again cross over the double lines and go into the northbound lane where it continued in a southerly direction until it collided head on with a vehicle operated by a Mr. Gunderson.

When Burk approached the site where defendant's vehicle had come to a stop, he observed that defendant was disheveled, verbally abusive, and that his speech was slurred and his eyes bloodshot. Burk concluded that defendant was intoxicated. When Officer Donald Tucker arrived on the scene he made similar observations and also stated that there was a strong odor of alcohol on defendant's breath. Gary O'Leary, an emergency medical technician who attended to defendant at the scene, noticed that defendant's vomit had a strong odor of alcohol. He also concluded that defendant was intoxicated.

After defendant was placed in an ambulance, Tucker advised him that he was under arrest for driving while intoxicated and read defendant his *Miranda* and DWI rights. Further, Tucker specifically advised defendant that his refusal to submit to a chemical test would result in the immediate suspension and future revocation of his driver's license and could be used against him at a future trial. Defendant refused to submit to a chemical test. As the ambulance neared the hospital, Tucker again read defendant his rights. Defendant again refused to take a test. O'Leary, who was present in the ambulance, testified that he heard defendant refuse to submit to a test after each occasion that Tucker advised defendant of his rights.

Defendant was subsequently indicted, tried and convicted of the crimes of vehicular assault, assault in the second degree and driving while intoxicated. This appeal by defendant ensued.

When the trial evidence is viewed in the light most favorable to the People *(see, People v Kennedy,* 47 NY2d 196, 203), it overwhelmingly establishes the requisite elements of the crimes charged. The prosecution established through the testimony of Burk that prior to the accident defendant's car was being driven in an erratic manner, swerving from lane to lane. Burk observed defendant's car strike the Gunderson vehicle head on while defendant was operating his vehicle in the wrong lane. Burk, Tucker and O'Leary all testified as to their observations of defendant following the accident and each concluded that defendant was intoxicated. In our view, there is no question that, cumulatively, this evidence was more than sufficient to establish the element of intoxication *(see, People v Ottomanelli,* 107 AD2d 212, *lv denied* 66 NY2d 617). Defendant's attempt at trial to show innocent explanations for his slurred speech, bloodshot eyes and alcoholic odor merely created factual issues which the jury, as the final arbiter of credibility, resolved against him *(see, People v Kennedy, supra).* Moreover, Dr. Alfred Frontera unequivocally testified that injuries sustained by defendant could not have produced an odor of alcohol on his breath, bloodshot eyes or slurred speech. Accordingly, we conclude that the jury verdict was supported by credible evidence which established defendant's guilt beyond a reasonable doubt.

We turn now to defendant's objections to rulings of County Court made during pretrial proceedings and at the trial itself to determine if any reversible error was committed. Initially, we hold that defendant's motion to dismiss the indictment on

jurisdictional grounds, made after the jury had been selected and after opening statements were given, was untimely *(see,* CPL 210.20 [2]; 255.20 [1]). It was also without merit and was properly denied.

Next, the record reveals that after the jury had been selected, defendant informed his attorney, John Greco, that he had retained another attorney to represent him. Greco immediately informed County Court and asked to be relieved as counsel. Greco also advised the court that he had a potential conflict of interest since one of the People's witnesses who had testified before the Grand Jury spoke to Greco about his testimony. Seizing upon the potential conflict of interest and citing possible prejudice to the jury, substitute counsel moved for a mistrial or, in the alternative, a reasonable adjournment to prepare for the suppression hearing.

In our view, County Court did not abuse its discretion when it denied defense counsel's motion for a mistrial. Greco made clear to the court that, at the time he picked the jury, he had no intention to testify and, further, since defendant himself did not want Greco to testify, it became clear that substituted counsel would not call Greco as a witness. The matter is moot since Greco didn't testify at the trial. Finally, on this point, defendant's fundamental right to a fair trial was not prejudiced by the court's refusal to declare a mistrial *(see, People v Celeste,* 95 AD2d 961, 963; *see also,* CPL 280.10). Similarly, County Court did not abuse its discretion when it denied defense counsel's request for an adjournment. An application for an adjournment rests within the sound discretion of the trial court *(People v Spears,* 64 NY2d 698, 699-700; *Matter of Anthony M.,* 63 NY2d 270, 283). Here, defendant's new attorney was aware that the jury had been selected and the case was ready for an immediate suppression hearing at the time he was retained. Moreover, defendant has never demonstrated that he was prejudiced by County Court's refusal to grant an adjournment. In any event, Greco sat with defendant's substituted counsel during the suppression hearing and thereafter assisted him in preparing the case for trial.

Finally, we hold that County Court, following a suppression hearing, did not err in denying defendant's motion to suppress evidence of his refusal to submit to a blood alcohol test after the accident. At the hearing, Tucker testified that after defendant was placed in the ambulance he was advised that he was under arrest for driving while intoxicated. Tucker also testified that he read defendant both the *Miranda* warnings and his DWI rights. Tucker further testified that he specifically

advised defendant that his refusal to submit to a chemical test would result in the immediate suspension and revocation of his license regardless of whether he was found guilty of the charge for which he was arrested and, further, that his refusal could be introduced into evidence against him. This warning was given to defendant twice while he was being transported to the hospital by ambulance and again in the emergency room at the hospital. On each occasion defendant refused to submit to the test. Further, Officer Benjamin Kohler testified that he also advised defendant of his rights in the emergency room and of the consequences of his refusal. Defendant refused to take the test. Thus, it is clear that defendant was warned "in clear and unequivocal language" (Vehicle and Traffic Law § 1194 [4]) and defendant's assertions to the contrary merely created factual issues which the jury resolved against him.

We have examined defendant's other allegations of error and find them to be without merit.

Judgment affirmed. Mahoney, P. J., Kane, Yesawich, Jr., Levine and Harvey, JJ., concur.