■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WES WALLGREN, Respondent. [943 NYS2d 639]—

McCarthy, J. Appeal from an order of the County Court of Sullivan County (LaBuda, J.), entered August 16, 2011, which granted defendant's motion to suppress evidence and dismissed the indictment.

Two police officers employed by the New York City Department of Environmental Protection observed defendant's vehicle moving slowly, stopping and starting, before it stopped on the side of the road in a dark, rural area. The officers pulled up behind the vehicle, activated their lights and approached defendant's vehicle. They testified that, as soon as defendant greeted them, they detected an odor of alcohol and observed signs of intoxication, leading them to conduct field sobriety

tests, which defendant failed. While arresting defendant for driving while intoxicated (hereinafter DWI), defendant allegedly resisted the officers' attempts to place him in handcuffs. At the police station, defendant hit one of the officers in the shoulder.

As a result of these actions, defendant was indicted for DWI (*see* Vehicle and Traffic Law § 1192 [3]), resisting arrest (*see* Penal Law § 205.30), parking on a highway (*see* Vehicle and Traffic Law § 1201 [a]), possession of an open container containing alcoholic beverages in a motor vehicle (*see* Vehicle and Traffic Law § 1227 [1]), and harassment in the second degree (*see* Penal Law § 240.26 [1]). Following a hearing on defendant's suppression motion, County Court found that the officers' testimony was not credible, determined that they were not justified in approaching defendant's vehicle, granted the suppression motion and dismissed the indictment (*People v Wallgren*, 32 Misc 3d 1232[A], 2011 NY Slip Op 51556[U] [2011]). The People appeal.

County Court erred in granting defendant's suppression motion. The police are allowed to approach a vehicle that is already stopped and request basic information when there is an "objective credible reason to do so, not necessarily indicative of criminality" (*People v Story*, 81 AD3d 1168, 1168 [2011]; *see People v Ocasio*, 85 NY2d 982, 984 [1995]). While "much weight must be accorded the determination of the suppression court with its peculiar advantages of having seen and heard the witnesses" (*People v Prochilo*, 41 NY2d 759, 761 [1977]), "this rule of deference must give way when the appellate court determines that the fact findings under review are against the weight of the evidence" (*People v Lopez*, 95 AD2d 241, 252 [1983], *lv denied* 60 NY2d 968 [1983]; *see People v Pilotti*, 127 AD2d 23, 29 [1987]; *see also People v Polanco*, 292 AD2d 29, 33 [2002]; *People v Tempton*, 192 AD2d 369, 370 [1993], *lv denied* 82 NY2d 760 [1993]). County Court found, and we agree, that defendant's vehicle started and stopped several times before pulling over. The police did not stop the vehicle, as it had already pulled over before they approached. Contrary to the court's findings, however, we find that defendant's actions in driving in an inconsistent, jolting manner before stopping in a dark, rural area constituted an objective credible reason to approach the vehicle to conduct a basic inquiry (*see People v Story*, 81 AD3d at 1168; *see also People v Jaime*, 171 AD2d 884, 884-885 [1991]). The court found that the officers here intended to conduct a DWI investigation, thereby engaging in a pretext stop, and that the officers admitted that defendant was in custody when they

activated their emergency lights.[1] But the actual motivations or subjective intentions of the individual officers involved are irrelevant and do not make objectively lawful conduct illegal or unconstitutional (*see Whren v United States*, 517 US 806, 813 [1996]; *People v Robinson*, 97 NY2d 341, 349-350 [2001]; *People v Ferraiolo*, 309 AD2d 981, 982 [2003], *lv denied* 1 NY3d 627 [2004]). Defendant's vehicle was not seized because a reasonable person would not have believed, under the circumstances, that the officers' actions significantly limited his or her freedom (*see People v Ocasio*, 85 NY2d at 984). Thus, the officers could approach defendant's stopped vehicle and request basic information.

An officer testified that, upon approaching defendant's vehicle, defendant greeted him, at which time the officer immediately detected a strong odor of alcohol. County Court criticized the officers for not inquiring as to defendant's health if they truly intended to conduct a welfare check. As soon as they smelled alcohol on the driver, however, the nature of the encounter changed and the officers were not required to ignore this new information that they had acquired. At that point, the officers were not constrained to treat this encounter solely as a welfare check, as they now had "a founded suspicion that criminal activity [was] afoot," raising the situation to the next level of intrusion and permitting them to interfere with defendant to the extent necessary to obtain "explanatory information" (*People v De Bour*, 40 NY2d 210, 223 [1976]).

The officers' observations of defendant's appearance and behavior provided probable cause to arrest him for DWI. Although we agree with County Court that some of the testimony concerning the administration of the field sobriety tests was inconsistent, these inconsistencies were not so great as to render the officers' testimony entirely incredible, and such a finding by County Court was against the weight of the evidence (*see People v Tempton*, 192 AD2d at 370-371; *see also People v Blackman*, 90 AD3d 1304, 1308 [2011]; *People v Rice*, 90 AD3d 1237, 1238 [2011]). Even though the officer did not properly administer all of the tests, "probable cause need not always be premised upon the performance of field sobriety tests or any specific number of such tests" (*People v Kowalski*, 291 AD2d 669, 670-671 [2002]

---

1. The officers acknowledged that a motorist would be required to stop and should remain at the side of the road when police activate emergency lights, but defendant was already stopped before they activated their lights. Additionally, the officers testified that they activated their lights for the safety of themselves, defendant and others traveling on this dark, 55 mile-per-hour roadway, as well as to advise the motorist that the people approaching his vehicle were police officers as opposed to unknown strangers.

[citations omitted]; *see People v Fenger*, 68 AD3d 1441, 1443 [2009]). Defendant's performance on some of the tests, along with his appearance and overall demeanor, provided probable cause to arrest him for DWI (*see People v Swanston*, 277 AD2d 600, 601, 602-603 [2000], *lv denied* 96 NY2d 739 [2001]). County Court did not address the resisting arrest charge, apparently dismissing the charge only because it found that the arrest was unlawful. Because we disagree with that finding, we also reinstate the resisting arrest count.

County Court found that an officer arbitrarily recorded only certain portions of the encounter with his personal Blackberry cellular device. The nefarious implications of this finding are not supported by the record. The officer testified that he had never previously recorded anything with his Blackberry and was unfamiliar with the process. He realized that the device had stopped recording and thereafter reengaged it. He later learned that the device automatically stops after a certain time period. This uncontradicted testimony provided a rational explanation for why the recording—which is not required by law—is incomplete, and in no way renders the officer's testimony incredible.

Similarly, no adverse inference or conclusion should be drawn from the officers' choice to take only a few pictures. County Court faulted the officers for not photographing defendant performing the field sobriety tests, but such actions are generally not capable of being captured in still photographs. In any event, the police are not required to take photographs of anything in particular. The presence or absence of pictures may be weighed by the jury, but should not affect the ruling in this suppression motion. Although the officers did not take a picture of defendant's vehicle to prove that it was parked halfway in the driving lane, both officers testified to that effect. We accept that testimony as credible (*see People v Hills*, 295 AD2d 365, 367 [2002], *lv dismissed* 98 NY2d 730 [2002]), regardless of the lack of photographic support. Thus, the court should not have dismissed the count for parking on a highway.

A trial court may impose a sanction against the People for spoliation of evidence. County Court found that the officers intentionally spoliated evidence by pouring out the liquid from a partially-full beer bottle and a can of alcohol found in defendant's vehicle.[2] Having dismissed the indictment, the court did not specifically state what, if any, sanction would be imposed for

---

2. County Court found it "borderline incredible" that the police would pour liquid out of a container rather than secure it as evidence and submit it for "proper testing" (*People v Wallgren*, 2011 NY Slip Op 51556[U], *7). Yet

this destruction of evidence. Upon remittal, the court may exercise its discretion to impose an appropriate, proportionate sanction, if any is deemed warranted (*see Marotta v Hoy*, 55 AD3d 1194, 1197-1198 [2008]; *see also* CPL 60.10; *People v Springer*, 122 AD2d 87, 90-91 [1986], *lv denied* 69 NY2d 717 [1986]).

County Court should not have dismissed the charge of harassment in the second degree. In dismissing the entire indictment, the court did not mention that charge and made no credibility or factual findings in relation to it. This Court may make necessary findings of fact where there has been a full hearing (*see People v Curran*, 229 AD2d 794, 795 [1996], *lv denied* 89 NY2d 863 [1996]). We have found that the police acted lawfully in approaching and arresting defendant. Even where an arrest is improper, however, a defendant can still be held to account for an "independent, unrelated act, lacking a causal connection" to the illegal police conduct, as such act is considered attenuated and purged of any taint (*People v Davis*, 59 AD2d 722, 723 [1977]). Here, after defendant was arrested on the side of the road, he was driven to the station and processed. At the station, defendant was allowed to speak to his wife on the telephone. When the call concluded, an officer directed defendant to return to a particular room. The officer testified, without contradiction, that defendant aggressively said, "Don't tell me what to do," and when the officer responded, defendant swung and struck him in the shoulder. Once defendant struck the officer, any preceding unlawful conduct by the police "was attenuated by his calculated, aggressive and wholly distinct conduct" (*People v Holland*, 74 AD3d 520, 521 [2010], *appeal dismissed* 18 NY3d 840 [2011]; *see People v Mercado*, 229 AD2d 550, 551 [1996], *lv denied* 88 NY2d 1070 [1996]). Thus, defendant was not entitled to suppression of his statements and actions at the police station relative to him striking the officer (*see People v Stone*, 197 AD2d 356, 356 [1993], *lv denied* 82 NY2d 904 [1993]). Even if the police acted unlawfully at the roadside encounter, as County Court found, the court should not have dismissed the count of harassment in the second degree.

We therefore deny defendant's suppression motion and remit the matter to County Court for further proceedings before a different judge.

Mercure, J.P., Lahtinen, Spain and Garry, JJ., concur. Ordered that the order is reversed, on the law and the facts, motion

there is no indication that the police regularly collect or test the liquid in a beer bottle to verify that it is alcohol. Here, the officers did see and smell the liquid before pouring it out, and they testified regarding their observations.

denied, and matter remitted to the County Court of Sullivan County for further proceedings not inconsistent with this Court's decision.